# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE NO. 5:15-CV-00129-RLV

| | |
|---|---|
| TAMMY LYNNE DUCKWORTH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) **ORDER**<br>)<br>NANCY A. BERRYHILL, ACTING )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>_____ ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff Tammy Lynne Duckworth's Motion for Judgment on the Pleadings (Doc. 13) and Defendant's Motion for Summary Judgment (Doc. 19). For the reasons that follow, the Plaintiff's Motion for Judgment on the Pleadings (Doc. 13) is **DENIED**, the Defendant's Motion for Summary Judgment (Doc. 19) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.   BACKGROUND

In May 2013, Plaintiff Tammy Lynne Duckworth filed an application for disability insurance benefits under the Social Security Act, alleging an inability to work due to a disabling condition commencing on July 13, 2007. (Tr. 58, 207-10). The Commissioner of Social Security ("Commissioner" or "Defendant") initially denied Plaintiff's application on June 13, 2013 and, upon reconsideration, again denied the application on August 16, 2013. (Tr. 58, 102-10, 115-23). Plaintiff requested a hearing and, on April 28, 2014, appeared by video conference before

1

Administrative Law Judge Paul Gaughen ("ALJ Gaughen").[1] (Tr. 58, 76-100). During the hearing, Plaintiff amended her disability onset date to January 25, 2010. (Tr. 58, 78).

Through a written decision, ALJ Gaughen concluded that Plaintiff was not disabled. (Tr. 58-69). At Step One, ALJ Gaughen found that Plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date. (Tr. 60). At Step Two, ALJ Gaughen found that Plaintiff suffered from multiple severe impairments, specifically degenerative disc disease with neural foraminal narrowing but no stenosis, chronic obstructive pulmonary disease, obesity, joint arthritis/arthralgia with complaints of widespread pain, mood disorder NOS, and anxiety disorder NOS. (Tr. 60-61). ALJ Gaughen, however, found that Plaintiff's alleged impairments of gastroesophageal reflux disease, high blood pressure, and high cholesterol did not qualify as severe because they were either controlled by medication or within normal limits during examinations. *Id.* At Step Three, ALJ Gaughen determined that Plaintiff's conditions did not meet any of the Listings, including Listings 1.04, 3.02, 12.04, or 12.06. (Tr. 61-62). For purposes of Listings 12.04 and 12.06, ALJ Gaughen employed the Psychiatric Review Technique, finding that Plaintiff's mental impairments caused her mild limitations in activities of daily living, moderate limitations in social functioning and with concentration, pace, and persistence, and that Plaintiff did not suffer any episodes of decompensation. (Tr. 62; *see also* Tr. 66-67).[2] ALJ Gaughen also determined that Plaintiff's obesity, alone or in combination with her other impairments, did not satisfy or equal a Listing because Plaintiff "retain[ed] the ability to ambulate effectively" and her obesity did not so enhance her other impairments as to rise to the severity of a Listing. (Tr. 61).

---

[1] ALJ Gaughen conducted the hearing via video conference because he is based in St. Louis, Missouri. (Tr. 77). Plaintiff testified from the Social Security office in Wilkesboro, North Carolina. *Id.*

[2] ALJ Gaughen's Step Three analysis references his discussion of Plaintiff's mental limitations in his residual functional capacity assessment. (Tr. 62); *see also infra* at 4-5.

ALJ Gaughen then commenced his residual functional capacity assessment by summarizing Plaintiff's hearing testimony and Plaintiff's medical records. (Tr. 63-67). ALJ Gaughen concluded that Plaintiff's testimony was inconsistent with aspects of her medical records and with her November 2009 function report form. *Id.* Specifically, ALJ Gaughen's review of Plaintiff's medical records revealed that most of Plaintiff's physical examinations resulted in normal findings with no acute distress. (Tr. 64-65). With respect to Plaintiff's back pain, ALJ Gaughen noted that the medical records indicated that, as a result of management through medication, Plaintiff experienced an 80% decrease in pain in August 2008 and continued relief from pain in 2011. (Tr. 65). Furthermore, a March 2008 magnetic resonance imaging ("MRI") revealed mild foraminal narrowing at L4-5 while a cervical MRI in November 2009 "showed a small protrusion with no stenosis." *Id.* ALJ Gaughen summarized the doctor notations from Plaintiff's November 2009 visit and MRI by stating, "[i]t was noted that her examination was fairly benign and the objective MRI findings showed no significant pathology." *Id.* Finally, with respect to the medical records, ALJ Gaughen noted that Plaintiff reported to her doctors that she was "walking often" even after her symptoms worsened following her running out of pain medication. (Tr. 64). Similarly, as late as fall 2011, a year and a half after her amended alleged disability onset date, Plaintiff reported "exercising by walking regularly." (Tr. 65). As to Plaintiff's November 2009 function report form, ALJ Gaughen noted that Plaintiff indicated she could lift ten pounds, walk sixty feet, follow instructions, and get along with authority figures. (Tr. 64). Based on his assessment of the "entire record," ALJ Gaughen concluded that Plaintiff's physical impairments limited her to work at the light exertional level with restrictions for (1) a sit/stand option such that she was only required to stand or walk for six hours in an eight hour work day and for no more than two hours at a time; (2) no fast-paced production work with rigid quotas; (3) no unusual work

3

stressors, including no exposure to dangerous hazards; (4) no work with mandatory overtime; and (5) no work without customary work hours and work breaks. (Tr. 66).

Turning to the impact of Plaintiff's mental limitations, ALJ Gaughen noted that the majority of the notations in Plaintiff's medical records reveal a normal mental status, and that even when Plaintiff reported worsening depression and anxiety the treating medical doctor noted an "otherwise normal mental status." *Id.* ALJ Gaughen, however, noted the contrary opinion of Plaintiff's mental status by Penny Matlock, NP-C, who diagnosed Plaintiff as suffering from chronic pain syndrome, anxiety, and depression, and opined that Plaintiff's conditions caused marked limitations in Plaintiff's functioning. *Id.* ALJ Gaughen gave "little weight" to Matlock's opinion because the opinion was inconsistent with the rest of Plaintiff's medical records and because, although Matlock treated Plaintiff, a nurse practitioner is not an acceptable medical source. *Id.*

Providing his reasoning for his earlier Psychiatric Review Technique findings, ALJ Gaughen determined that Plaintiff suffered from no more than mild limitations in daily living because she independently initiated a wide range of activities and that any limitations on daily living were, as reported by Plaintiff, attributable to her physical impairments rather than her mental impairments. (Tr. 67). As to social functioning, ALJ Gaughen found that Plaintiff maintained meaningful relationships and did not have issues interacting with her doctors or answering questions at the hearing but that Plaintiff no longer went outside the house very much. *Id.* Based on these findings, ALJ Gaughen concluded that Plaintiff suffered from moderate limitations in social functioning. *Id.* Turning to concentration, persistence, and pace, ALJ Gaughen noted that Plaintiff's daily activities demonstrated she had good concentration and persistence and that Plaintiff reported having no difficulties paying attention or following instructions. *Id.* ALJ

Gaughen, however, also found that Plaintiff would likely struggle with changes to her routine. *Id.* Accordingly, ALJ Gaughen concluded that Plaintiff experienced moderate limitations with respect to concentration, persistence, and pace. *Id.* To account for Plaintiff's mental impairments and the limitations noted in his Psychiatric Review Technique analysis, ALJ Gaughen incorporated two restrictions into Plaintiff's residual functional capacity: (1) no work requiring sophisticated or higher level social interaction skills, and (2) no work requiring frequent travel on common carriers to new and unfamiliar places. *Id.* ALJ Gaughen, however, concluded that Plaintiff "could perform work requiring routine and perfunctory social interaction with others including the retail public; and could learn and apply to work new, simple, and moderately detailed instructions of no more than five to six steps." *Id.*

At Step Four, ALJ Gaughen relied on a vocational expert to determine that Plaintiff, given her residual functional capacity, could not return to her past relevant work as a home healthcare aid/nurse assistant, teaching assistant/teacher aide II, or sanding machine operator/treating engineering helper. (Tr. 68). Proceeding to Step Five and again relying on the vocational expert, ALJ Gaughen determined that Plaintiff, however, could perform the work requirements of several jobs that exist in the national economy, including garment folder, DICOT § 369.687-018, inspector, DICOT § 669.687-014, and hand packager/inspector-packer, DICOT § 784.687-042. (Tr. 68-69). Accordingly, ALJ Gaughen concluded that Plaintiff was not disabled for purposes of receiving disability insurance benefits under the Social Security Act. (Tr. 69). Plaintiff requested review of ALJ Gaughen's adverse decision before the Appeals Council but the Appeals Council denied the request. (Tr. 1-7, 54). Plaintiff initiated this action seeking judicial review of ALJ Gaughen's decision and both Plaintiff and the Commissioner have filed their respective motions and supporting memorandums for a judgment as a matter of law. (Docs. 13-14, 19-20).

## II. DISCUSSION

### A. Standard of Review

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that her decision is supported by substantial evidence, the Commissioner's determination may not be overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (brackets and internal quotation marks omitted). Critically, "[t]he substantial evidence standard 'presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (ellipsis omitted) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal

quotation marks omitted). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, 907 F.2d at 1456. Therefore, the issue before this Court is not whether Plaintiff *is* disabled, but whether ALJ Gaughen's conclusion that Plaintiff is *not* disabled is explained and *supported by substantial evidence* and that such decision was reached based upon a correct application of the relevant law.

B. Analysis

Plaintiff raises three assignments of error in her motion for judgment on the pleadings: (1) ALJ Gaughen erred by not finding her disabled at Step Three under Listings 1.04, 12.04, 12.06, or 14.09; (2) ALJ Gaughen incorrectly concluded that Plaintiff could perform a reduced range of light work; and (3) ALJ Gaughen failed to give proper weight to Matlock's opinion. (Doc. 14 at 7-14). Because the Plaintiff's third assignment of error impacts this Court's evaluation of Plaintiff's first and second assignments or error, the Court will commence its analysis by considering the weight due to Matlock's opinion.

    i. *Opinion of Penny Matlock, NP-C*

Plaintiff argues that ALJ Gaughen erred by giving Matlock's opinion "little weight" because Matlock, as a treating medical professional, was in the best position to judge Plaintiff's condition and Plaintiff's functional limitations. *Id.* at 13-14. Plaintiff further argues that 20 C.F.R. § 404.1513(d) (2013) required ALJ Gaughen to consider Matlock's opinion. *Id.* Specifically, Plaintiff faults ALJ Gaughen for not crediting Matlock's conclusion that Plaintiff is in severe and chronic pain and suffers from a marked restriction in daily living, a marked difficulty in social

7

functioning, and deficiencies with concentration, persistence, or pace that would result in frequent failures to complete tasks in a timely manner. *Id.*; (*see also* Tr. 409-10).

The Regulations governing social security benefit determinations separate medical source evidence into two categories—"acceptable medical sources" and other medical sources—based on the educational and professional nature of the practitioner rendering the opinion. *See* 20 C.F.R. § 404.1513(a), (d); Social Security Ruling ("SSR") 06-3p, 2006 WL 2329939, at *1. A treating medical practitioner qualifies as an "acceptable medical source" if the practitioner is a licensed physician, a licensed or certified psychologist, a licensed optometrist, a licensed podiatrist, or a qualified speech-language pathologist. 20 C.F.R. § 404.1513(a); SSR 06-3p, 2006 WL 2329939, at *1. All other medical practitioners, specifically including nurse practitioners, qualify only as other medical sources. 20 C.F.R. § 404.1513(d)(1).

"[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-3p, 2006 WL 2329939, at *1. However, medical practitioners not qualifying as acceptable medical sources "may provide information from which inferences and conclusions may be drawn about the credibility of the individual's statements. Such sources may provide information about the seven factors listed in the regulations and may be especially helpful in establishing a longitudinal record." SSR 96-7p, 1996 WL 374186, at 8; *see also* 20 C.F.R. § 404.1513(d) (noting that Social Security Administration "may also use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work"); SSR 06-3p, 2006 WL 2329939, at *5 (noting that more weight may be given to an other medical source than an acceptable medical source if the other medical source provided more treatment and care and provided better evidence and a better explanation for her opinion). Recognizing the potential value of other medical source evidence,

8

SSR 96-7p requires that an administrative law judge "consider" the evidence provided by other medical sources when determining the claimant's credibility and whether the claimant is disabled. *See Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016). Nonetheless, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' are the most qualified health care professionals." SSR 06-3p, 2006 WL 2329939, at *5.

ALJ Gaughen's written decision clearly demonstrates that he considered Matlock's other medical source opinion when determining the extent of Plaintiff's limitation and whether Plaintiff was disabled. (*See* Tr. 66). The written decision further demonstrates ALJ Gaughen's basis for discounting Matlock's opinion—that Matlock's opinion was inconsistent with the objective medical evidence and Plaintiff's self-reports of improvement.[3] *Id.* Accordingly, Plaintiff's assignment of error regarding ALJ Gaughen's treatment of Matlock's opinion boils down to a disagreement over how ALJ Gaughen should have viewed and weighed conflicting evidence rather than whether ALJ Gaughen considered Matlock's opinion when reaching his decision. Therefore, the assignment of error calls for a level of review beyond what this Court is permitted to engage in and is without merit.

    ii.  *Ability to Perform a Reduced Range of Light Work*

Plaintiff argues that ALJ Gaughen erred when he concluded that Plaintiff could perform a reduced range of light work. (Doc. 14 at 10-13). In support of this argument, Plaintiff relies on Matlock's opinion to contend that an individual suffering from the symptoms and conditions

---

[3] The Court notes that the opinion in the record cited to by Plaintiff is little more than a checked off and circled social security disability form that includes no narrative explanation supporting Matlock's conclusory opinions. (*See* Tr. 409-10).

identified by Matlock could not perform work at any exertional level. *Id.* Plaintiff also relies on her own testimony about her symptoms and her ability/inability to perform certain tasks. *Id.* at 12. To the extent Plaintiff's argument rests on the crediting of Matlock's opinion, this Court's earlier conclusion that ALJ Gaughen did not err when he discounted Matlock's opinion also resolves Plaintiff's assignment of error regarding ALJ Gaughen's conclusion that Plaintiff could perform a reduced range of light work. As to Plaintiff's own testimony, ALJ Gaughen concluded that Plaintiff was not entirely credible with respect to the limiting effects of her symptoms. (Tr. 63). Plaintiff does not directly contest ALJ Gaughen's adverse credibility determination and any potential assignment of error as to ALJ Gaughen's credibility determination would not be well taken because ALJ Gaughen relied on the objective medical records and Plaintiff's self-reports to her doctors when discrediting Plaintiff's hearing testimony. (*See* Tr. 63-66). Accordingly, Plaintiff's assignment of error regarding ALJ Gaughen's conclusion that she could perform a reduced range of light work is unsupported and without merit.

   iii. *Listings*

    a. Duty to Present Argument

Before addressing whether ALJ Gaughen erred in not finding Plaintiff disabled under any of the Listings for purposes of Step Three, the Court finds it necessary to discuss the duty placed on a claimant to present and advance her arguments. A social security claimant challenging an adverse decision by an administrative law judge as to whether the claimant was disabled under a Listing has a duty to "present a cohesive argument with specific references to the medical record as to how her impairment satisfies [the] Listing." *Rice v. Astrue*, 2010 WL 538871, at *3 (E.D. Ky. Feb. 12, 2010). "It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Rice v. Comm'r*

*of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. Feb. 27, 2006) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)); *see also Williams v. Astrue*, 2012 WL 2865479, at *7 (M.D. Fla. July 11, 2012) (argument waived where mentioned in passing without citation to record, pertinent facts, and governing legal standard); *Warner v. Astrue*, 880 F. Supp.2d 935, 945 (N.D. Ind. 2012) ("[T]he Seventh Circuit repeatedly has made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (brackets, internal quotation marks, and ellipsis omitted)). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.'" *Rice v. Astrue*, 2010 WL 538871, at *3 (brackets and ellipses omitted) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). Furthermore, "[a]ny issue not raised directly by [a] [p]laintiff is deemed waived." *Bunton v. Colvin*, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014).

Plaintiff's arguments regarding whether ALJ Gaughen erred by not finding that she met one of the Listings identified in Plaintiff's memorandum centers exclusively on whether the diagnoses in Plaintiff's medical records satisfy a Listing. (*See* Doc. 14 at 7-10). In limiting her argument to this matter, Plaintiff does not contend that ALJ Gaughen failed to adequately explain his basis for determining that Plaintiff did not meet any of the Listings or that ALJ Gaughen improperly used boilerplate language when reaching his Step Three determinations regarding the applicability of the Listings. Accordingly, any arguments Plaintiff could have raised regarding these potential issues are waived. Furthermore, Plaintiff suggests in the header of her argument section on the Listings, as well as once in passing in the body of her argument, that she qualifies as disabled under Listing 14.09. *See id.* at 7. Plaintiff, however, fails to discuss the criteria for qualifying as disabled under Listing 14.09 or how her diagnoses and symptoms fit the criteria. *See id.* at 7-8. Accordingly, Plaintiff's cursory reference to Listing 14.09 does not constitute a

sufficient argument to cause this Court to review whether ALJ Gaughen erred by not finding Plaintiff disabled under Listing 14.09 and any assignment of error relative to Listing 14.09 is waived.

As to Listings 1.04, 12.04, and 12.06, Plaintiff's argument on each Listing amounts to a regurgitation of the criteria for the Listing and a recitation of the conditions from which Plaintiff allegedly suffers. Plaintiff fails to present any arguments tying her alleged diagnoses to the criteria in the Listings, instead leaving that task to the Court.[4] Accordingly, the Court concludes that Plaintiff has waived her arguments regarding Listings 1.04, 12.04, and 12.06. Nonetheless, because Plaintiff at least provides the skeleton of an argument as to Listings 1.04, 12.04, and 12.06, the Court will alternatively discuss and reject the possible merits of Plaintiff's claim under these three Listings.

b. Listing 1.04(A)[5]

Listing 1.04(A) covers disorder of the spine, including degenerative disc disease, that compromise a claimant's nerve root or spinal cord. Additionally, to qualify as disabled under Listing 1.04(A), a claimant must demonstrate: (1) "[e]vidence of nerve root compression

---

[4] The deficiency in Plaintiff's argument is particularly apparent within the context of Listing 1.04. First Plaintiff fails to identify which of the three provisions within Listing 1.04—A, B, or C—she believes she satisfies. (*See* Doc. 14 at 7-8). Second, to the extent that the assignment of error may best be interpreted as falling within Listing 1.04(A), that Listing requires a claimant to demonstrate that her disorder of the spine compromises either her nerve root or her spinal cord and causes motor and sensory or reflex loss. Yet, Plaintiff does nothing to connect the blanket medical diagnoses that she recites to any impairment to the nerve root or spinal cord or to any motor and sensory or reflex loss. *See id.* Instead, Plaintiff leaves it to the Court to discover, on its own, whether conditions such as "disc protrusion eccentric to the right in the far lateral zone at L4-L5 with slight narrowing of the neural foramen and a small synovial cyst dorsal to the left L5-S1 facet joint" compromise and compress the nerve root or spinal cord and cause motor and sensory or reflex loss. *See id.*
[5] As earlier noted, Plaintiff does not identify which of the three provisions within Listing 1.04 she believes she satisfies. (*See* Doc. 14 at 7-8). As Plaintiff neither cites to a diagnosis of spinal arachnoiditis manifesting in dysethesia nor a diagnosis of spinal stenosis, the Court is left to construe Plaintiff's argument as pertaining to Listing 1.04(A). *See* Listing 1.04(B) (requiring diagnosis of "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours"); Listing 1.04(C) (requiring diagnosis of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively as defined in 1.00B2b").

characterize by neuro-anatomic distribution of pain"; (2) "limitation of motion of the spine"; (3) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss"; and (4) "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Listing 1.04(A); *see also Rolus v. Colvin*, 2016 WL 5316821, at *2 (W.D. Okla. Sept. 22, 2016) (stating requirements for qualifying as disabled under Listing 1.04(A)).

ALJ Gaughen's discussion of Plaintiff's medical records show that she satisfies some, but not all, of the criteria under Listing 1.04(A). ALJ Gaughen did determine that Plaintiff suffers from degenerative disc disease and that she had a positive straight-leg test. (Tr. 60-61, 65). ALJ Gaughen's summation of Plaintiff's medical records, however, suggests that objective tests revealed no significant impingement on the nerve root or spinal cord as the tests resulted in Plaintiff's doctor concluding that her back pain was likely myofascial—muscle based—in nature. (Tr. 65). Additionally, ALJ Gaughen noted that the MRIs reveled only a "*mild* bulge at L4-5 and *mild* foraminal narrowing" and that the cervical protrusion was "*small*." *Id.* (emphasis added). ALJ Gaughen's notation that Plaintiff's back pain had a "non-organic or psychological component" also supports the conclusion that Plaintiff's back problems were not primarily attributable to a structural defect and were not the result of a compromised nerve root or spinal cord. *See id.* Furthermore, ALJ Gaughen notations that Plaintiff physical examinations were "mostly normal" and "fairly benign" and that the "objective MRI findings showed no significant pathology" support the conclusion that Plaintiff's disorder of the spine did not compromise the nerve root or the spinal cord. *Id.* Finally, ALJ Gaughen's notation about Plaintiff "exercising by walking regularly," in July 2011, runs contrary to the necessary finding that Plaintiff experienced motor loss accompanied by sensory or reflex loss and nothing in Plaintiff's memorandum points

13

the Court to any medical records suggesting that Plaintiff experienced any sensory or reflex loss. *See id.*; (*see also* Doc. 14 at 7-8). Accordingly, ALJ Gaughen did not err when he concluded that Plaintiff failed to carry her burden relative to Listing 1.04(A).[6]

### iii. Listings 12.04 and 12.06

In support of her argument that she qualifies as disabled under Listings 12.04 and 12.06, Plaintiff relies on Matlock's opinion and her own hearing testimony but does not cite any evidence in the record from medical practitioners other than Matlock. (*See* Doc. 14 at 8-10). Having already concluded that ALJ Gaughen did not err in discounting Matlock's opinion, Plaintiff's argument lacks any medical source support for the findings necessary to satisfy Listings 12.04 and 12.06. Furthermore, as discussed *supra* at 10, Plaintiff does not directly contest ALJ Gaughen's adverse credibility determination and ALJ Gaughen supported his credibility determination with substantial evidence. In any event, ALJ Gaughen supported his conclusion that Plaintiff did not satisfy Paragraphs B and C of Listings 12.04 and 12.06 with substantial evidence, (*see* Tr. 66-67), and the aspects of Plaintiff's testimony identified in Plaintiff's memorandum do not address a sufficient number of the characteristics listed in Listing 12.04(A) for Plaintiff to qualify as disabled under that Listing. *See* Listing 12.04(A) (requiring claimant to meet four of nine characteristics)[7]; (Doc. 14 at 10 (discussing Plaintiff's testimony regarding not leaving the house much, not liking crowds, and taking naps because of difficulty sleeping)). Accordingly, Plaintiff's assignment of error as to Listings 12.04 and 12.06 is unsupported and without merit.

---

[6] "The claimant has the burden of production and proof at Steps 1-4." *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

[7] At the time of Plaintiff's claim and hearing, the characteristics under Listing 12.04(A) relevant to a claimant with a depressive syndrome were: (1) "anhedonia or pervasive loss of interest in almost all activities"; (2) "appetite disturbance with change in weight"; (3) "sleep disturbance"; (4) "psychomotor agitation or retardation"; (5) "decreased energy"; (6) "feelings of guilt or worthlessness"; (7) "difficulty concentrating or thinking"; (8) "thoughts of suicide"; and (9) "hallucinations, delusions, or paranoid thinking." Listing 12.04(A)(1).

### III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1)  Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED**;

(2)  Defendant's Motion for Summary Judgment (Doc. 19) is **GRANTED**; and

(3)  The decision of the Commissioner is **AFFIRMED**.

Signed: April 26, 2017

Richard L. Voorhees
United States District Judge